**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION**

**CRIMINAL NO. 2:06CR4**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **VS.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| | ) | |
| **TERENCE HOWARD ROACH** | ) | |
| **JOSHUA BRENT SQUIRREL, a/ka/** | ) | |
| **"Cubby" and** | ) | |
| **MICHAEL EDWARD SLEE** | ) | |
| | ) | |

**THIS MATTER** came on for hearing before the Court on November 19, 2007, on the issue of whether or not the Defendants would be held jointly and severally liable for payment of restitution to the estate of the victim herein. The Government was represented by the United States Attorney and the Defendants were present with counsel.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts set forth in the Defendants' presentence reports have been adopted previously by the Court as the factual bases for their pleas of guilty.

On January 15, 2006, a church youth group from Florida was hiking in the Deep Creek area of the Great Smoky Mountains National Park and discovered the dead body of a female, later identified through dental records as the victim, 18-year-old Tamara Susan Seay. **Presentence Investigation Report ("PSR") of Michael Edward Slee, prepared April 16, 2007, at 4.**[1] Seay was clothed and lying on her back in a pool of blood with visible wounds to her face and head. An autopsy revealed two gunshot wounds to the head as the cause of death. *Id.*

The subsequent investigation revealed that Seay attended a party and was drinking heavily on the night of January 13, 2006, with several people, including Defendants Roach and Squirrel, at the house of a man named Glen David Jumper, a/k/a "Big Dave." *Id.* **at 4-5**. Roach claimed he and Squirrel had consensual sex with Seay that evening. *Id.* **at 6**. Thereafter, Roach and Squirrel left Big Dave's house, but friends reported

---

[1] The presentence report for each Defendant describes the same factual basis of the criminal activity underlying the convictions and "The Offense Conduct" section of each Defendant's PSR is identical. *See* **Slee PSR, at 4-5; PSR of Terence Howard Roach, prepared April 2, 2007, at 4-5; PSR of Joshua Brent Squirrel, prepared April 6, 2007, at 4-5.** For the purpose of clarity, the Court mainly cites to Defendant Slee's PSR unless the discussion requires specific information provided in another Defendant's PSR.

that Seay was angry with both Roach and Squirrel and threatened to call her uncle to "take care of" them. *Id*. **at 5.** Not wanting any trouble at his home, Big Dave "called around" trying to get in touch with Roach and Squirrel to ask them to return and pick up Seay and take her home. *Id*.

Eventually, Roach returned to Big Dave's house with Defendant Michael Slee. On the way to Big Dave's house, Roach revealed to Slee that Seay had stolen drugs from him and owed him a lot of money. *Id.* According to Roach, Seay was passed out when he and Slee arrived at Big Dave's house and had to be carried out to Slee's car. *Id*. **at 6.** Roach then told Slee he wanted to meet someone in the Deep Creek area of the national park to buy some drugs. *Id*. They traveled through Bryson City and on to Deep Creek, and after reaching a pull-off area of a gravel road, Slee stopped the vehicle. *Id*. Roach then picked up Seay, who was still passed out in the backseat, and carried her into the woods. *Id.* According to Roach's statement to authorities, Seay woke up once they were in the woods and told him that she would have some drugs when they arrived at her house. Roach did not believe her and Seay became angry and grabbed for him. *Id.* When he pushed her away, she grabbed for him a second time. *Id*. Roach then stated it was at this point he decided to kill

Seay. *Id.* He pushed Seay to the ground and she fell flat on her back. *Id.* He shot her from eight to ten feet away as she was beginning to stand up. *Id*. The shot caused her to fall backwards onto her back and she began moaning. *Id*. He stated that he could not leave her in that much pain, so he "just made sure" and shot Seay a second time. *Id.*

Slee told investigators that he saw Seay stand up after Roach set her down in the small creek, the cold water apparently waking her. *Id*. He said he looked away then heard Seay scream and saw her fall back to the ground. *Id*. He saw Roach "fiddling with something in his waistband" and then saw him shoot Seay. *Id*. He then ran to his car, but turned around and observed Roach walking towards Seay and point his gun at her as she was laying on her back. *Id*. As he was getting in his car, Slee stated he heard a second shot. *Id*. Roach then returned to the car and instructed Slee to drive back to the Reservation. *Id*. Slee stated Roach gave him money that night to keep quiet about the shooting and later provided him with cocaine as further inducement. *Id.* When the pair reached the Reservation, they drove to Squirrel's house where Roach disclosed to Squirrel that he had shot and killed Seay in the Deep Creek area. *Id.* **at 5**. Roach gave the gun to Squirrel and told him to dispose of it. *Id*. According

to Squirrel, he threw the gun into the woods that night but later retrieved it and turned it over to another person to hold for him. *Id.* That individual became suspicious and turned the gun over to authorities. *Id.* Subsequently, Squirrel and Slee both identified the weapon as the one Roach gave to Squirrel. *Id.* **at 5, 6**.

After Seay's body was discovered, Seay's family members reported that Roach, Squirrel and Slee had told others that Roach and Slee had driven onto a gravel road where they met with an unknown male in a silver car. They stated that Seay had left with that man, and since that time, they had not seen her. *Id.* **at 5-6.**

Thereafter, Defendant Roach was charged with first degree murder in violation of 18 U.S.C. § 1111; kidnapping, in violation of 18 U.S.C. §1201(a)(2); and the possession and use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). **Bill of Indictment, filed February 8, 2006.** Defendants Squirrel and Slee were charged as accessories after the fact to first degree murder, in violation of 18 U.S.C. §§ 3, 1111. *Id.* **at 2-3.** All three Defendants entered into plea agreements with the Government. **Roach Plea Agreement, filed July 12,**

**2006; Slee Plea Agreement, filed July 27, 2006; Squirrel Plea Agreement, filed July 27, 2006.**

On August 4, and 11, 2006, Defendants Roach, Slee, and Squirrel, along with their respective counsel, appeared before the Magistrate Judge for a Rule 11 hearing to formally enter their guilty pleas. As to each Defendant, the Magistrate Judge found that the plea with knowingly and voluntarily made and entered, that the Defendant understood the charges, potential penalties and consequences of the plea, and thereby accepted each Defendant's plea of guilty. **Rule 11 Inquiry and Order of Acceptance of Plea (Defendant Slee), filed August 4, 2006, at 9; Rule 11 Inquiry and Order of Acceptance of Plea (Defendant Roach), filed August 4, 2006, at 10; Rule 11 Inquiry and Order of Acceptance of Plea (Defendant Squirrel), filed August 11, 2006, at 9.**

On June 7, 2007, the Court sentenced Defendant Squirrel to a term of 70 months imprisonment; Defendant Slee was sentenced on June 18, 2007, to a 57-month term of imprisonment; and on August 31, 2007, Defendant Roach was sentenced to two consecutive life terms. **Judgment in a Criminal Case (Squirrel), filed June 21, 2007; Judgment in a Criminal Case (Slee), filed June 26, 2007; Judgment in a Criminal**

**Case (Roach), filed September 14, 2007.** The Court further ordered that each Defendant be jointly and severally liable for restitution in the amount of $5,645 for necessary funeral and related expenses, and directed that the following paragraph be added to each Judgment:

> This restitution does not include restitution which the court will order paid for the use and benefit of [Jailyn] Byrd, infant daughter of the deceased murder victim. The amount and schedule for payment of same will be determined by the Court after considering a recommended report to be filed by the U.S. Probation Office within the next ninety (90) days. The Probation Officer will contact Tribal Authorities, defense counsel for the three (3) co-defendants and the U.S. Attorney for recommendations.

**Defendants' Judgments, at 4, 5a.** None of the Defendants have objected to the $5,645 restitution amount ordered for funeral and related expenses.

On October 24, 2007, Senior U.S. Probation Officer Dewayne Capps filed a memorandum regarding the issue of restitution to the deceased victim's estate for the use and benefit of her minor child and a supplement to the Defendants' PSR's addressing the amount of such restitution.

**Memorandum and Supplement to Presentence Report, filed under seal, October 24, 2007.** Attached to Officer Capps' report is a memorandum filed by the Government and Defendants' responses thereto, as well as Defendants' objections to the Officer's supplement to the PSR's.

*Id*.  After providing an opportunity for the parties to submit additional materials for the Court's review, a hearing was held on November 19, 2007.  **See Order, filed October 24, 2007.**

## II. STANDARD OF REVIEW

The Mandatory Victim Restitution Act of 1996 ("MVRA") requires a district court to order a defendant convicted of a crime of violence, either by jury trial or pursuant to a guilty plea negotiated by a plea agreement, to make restitution to the victim of the offense. **18 U.S.C. §§ 3663A(a)(1), (c)(1)(i)*; see United States v. Davenport*, 445 F.3d 366, 373 (4th Cir. 2006).**  The MVRA "shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense – (A) that is – (i) a crime of violence, as defined in section 16 . . . [and] (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." **18 U.S.C. §§ 3363A(c)(1)(A)(i), (B)**.  "The term 'crime of violence' means – (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or

property of another may be used in the course of committing the offense."

**18 U.S.C. § 16.**

The MVRA defines a victim as:

[A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

**18 U.S.C. § 3663A(a)(2).** If the victim of the violent crime is deceased then the Court shall order restitution payable to the victim's estate. **18 U.S.C. § 3663A(a)(1)**. In cases of death, restitution shall be ordered for necessary funeral and related services. **18 U.S.C. § 3663A(b)(3).** Restitution may also be ordered for the lost income of the victim. **18 U.S.C. § 3663A(b)(2)(C).** The MVRA further provides that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." **18 U.S.C. § 3664(f)(1)(A);** *United States v. Alalade*, **204 F.3d 536, 540 (4th Cir. 2000);** *see United States v. Futrell*, **209 F.3d 1286, 1291 (11th Cir. 2000).**

In determining the amount of restitution, the Government has the burden of proof by a preponderance of the evidence. **18 U.S.C. § 3664(e); see United States v. Henoud,** **81 F.3d 484, 490 (4ᵗʰ Cir. 1996)** (**holding the Government bears the burden of establishing the victim's loss by a preponderance of the evidence)**. The Court applies this burden of proof in a "practical, common-sense way. So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." **United States v. Savoie**, **985 F.2d 612, 617 ( 1ˢᵗ Cir. 1993) (citing United States v. Hand**, **863 F.2d 1100, 1104 (3d Cir. 1988))**. Moreover, "[t]he determination of an appropriate restitution amount is by nature an inexact science." **United States v. Teehee**, **893 F.2d 271, 274 (10ᵗʰ Cir. 1990).**

The Court has carefully examined the Supplement to the Defendants' PSR's and the figures proposed by the Government in its memorandum, as well as the arguments of counsel at the hearing. **See Officer Capps' Supplement, attached to Memorandum, supra; Government's Memorandum, attached to Officer Capps' Memorandum, supra, at 11; Transcript of Proceedings, filed December 5, 2007.** The Court concludes that this information provides sufficient and competent evidence

in which to determine an appropriate amount of restitution in this case. **18 U.S.C. §§ 3663, 3664.**

## III.  DISCUSSION

## A.  RESTITUTION TO THE VICTIM'S ESTATE

The Government argues that each Defendant herein should be jointly and severally liable for an amount of restitution to be paid to the deceased victim's estate. **Government's Memorandum Regarding Victim Restitution,** *supra.* The Government further argues that surviving members of a victim's estate, such as the minor child of the victim herein, may also be considered victims under the MVRA. ***Id.* at 7 (citing *United States v. Checora*, 175 F.3d 782, 795 (10th Cir. 1999) (holding the surviving minor sons of murdered father were victims within the meaning of MVRA because they were directly and proximately harmed by father's death and lost financial support)).**

Defendant Roach argues that the deceased's minor child has suffered from, but was not "directly and proximately" harmed by, the death of her mother by the Defendant's hand and objects to an award of restitution to the minor child as "not authorized by applicable law."

**Defendant Roach's Response to Government's Motion for Restitution,** ***attached to*** **Officer Capps' Memorandum, at 1-2.** In addition, Roach argues that the Government's attempt to secure restitution for the minor child is "camouflaged 'child support'" and that the same relief "**may** be available through ancillary civil actions." **Defendant Roach's Brief on Government's Motion for Restitution,** ***attached to*** **Officer Capps' Memorandum, at 2 (emphasis in original).** Like Defendant Roach, Defendants Slee and Squirrel advance the same "direct and proximately harmed" argument as well as the argument that the minor child could obtain the same relief through the Eastern Band of Cherokee Indians. **Joint Brief on Accessories' Liability for Restitution,** ***attached to*** **Officer Capps' Memorandum, at 1-2, 5.** They also argue that as accessories to the murder of Seay, they had no role in her actual death, but merely concealed the murder weapon and transported Roach after the murder. *Id.* **at 4.**

At the hearing, the Government argued that each Defendant had committed a crime that was clearly covered by the MVRA; that Seay's estate is the victim and the minor child is included in that estate for restitution purposes; that the Court should consider losses such as Seay's

future lost income and gaming revenues as well as expenses for funeral and related costs; and all the Defendants entered into plea agreements which specifically provided for the payment of full restitution as ordered by the Court. **Transcript,** *supra***, at 3-4.** Counsel for Defendant Roach repeated his argument that the request for restitution for the minor child was "camouflaged child support," and further argued that the amount of restitution proposed by the Government was based on speculation about the victim's lost income and employability, and that this Court was an improper forum for the imposition of such damages. *Id.* **at 7-13.** Counsel for Defendants Squirrel and Slee also presented these same arguments as well as the argument that these Defendants were not directly responsible for Seay's death. *Id.* **at 14-21.**

First, there can be no doubt that first degree murder is a crime of violence under the MVRA. *See* **18 U.S.C. § 3663A(c)(1)(A); 18 U.S.C. § 16**. Next, pursuant to the provisions of the MVRA, the Court finds that Seay is the victim of the crimes charged herein, that she is deceased, and any restitution is properly ordered payable to her estate. **18 U.S.C. § 3663A(a)(1).**

Thirdly, the Court finds all three Defendants are responsible for the payment of restitution to Seay's estate. There is no doubt that the MVRA mandates the Court to order Roach to pay restitution to Seay's estate. **18 U.S.C. § 3663A(a)(1), (c)(1)(A)(I)**. As to Defendants Slee and Squirrel, a person is guilty as an accessory-after-the-fact if "knowing that an offense against the United States has been committed, [he] receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment." **18 U.S.C § 3**.

The Fourth Circuit has ruled on the issue of whether an accessory falls under the provisions of the MVRA. ***See United States v. Quackenbush*, 9 F. App'x 264 (4ᵗʰ Cir. 2001).** In *Quackenbush*, the defendant was convicted by a jury of being an accessory-after-the-fact to bank robbery. ***Id*. at 265.** He did not participate in the planning or execution of the armed robbery but did provide assistance to the three bank robbers "by driving them to and from various locations, harboring them, and helping them travel and spend the proceeds of the robbery." ***Id.*** The Court affirmed the district court's order of restitution under the MVRA that held defendant jointly and severally liable for the full amount of the bank's unrecovered losses. ***Id.*** In so doing, the Circuit found that even

though the armed robbery was complete prior to defendant's involvement, the defendant's "conduct, for which he was convicted, impaired both the police's effort to stop the bank robbers and the bank's efforts to recover the stolen money." *Id*. **at 269.**

The facts here are similar to those in *Quackenbush.* Although Slee did not plan or actively participate in Seay's murder, he did witness Roach shoot and kill her and then drove Roach from the murder scene. **Slee PSR, *supra*, at 6.** He also received money and drugs from Roach as inducements to keep quiet about the murder. *Id.* Roach admitted to Squirrel that he murdered Seay and ordered Squirrel to take the murder weapon and get rid of it; Squirrel complied. *Id*. **at 5**. Squirrel threw the gun into the woods that night, recovered it the next morning, and then gave it to another person to hold for him. *Id.* Both Slee and Squirrel joined Roach in the fabricated story that Seay was last seen getting into a silver car with an unknown male. *Id*. **at 5-6.** These actions of Slee and Squirrel deliberately obstructed the murder investigation by authorities and delayed the apprehension of Roach. The Court, therefore, finds that Slee and Squirrel, as accessories, are liable for full restitution to Seay's estate under the MVRA.

Lastly, the MVRA authorizes a sentencing court to award restitution if the parties have agreed to do so in a plea agreement.  **18 U.S.C. § 3663A(a)(3)**.  Restitution is undoubtedly a part of a defendant's sentence.  ***United States v. Cohen*, 459 F.3d 490, 495 (4ᵗʰ Cir. 2006),** *cert. denied*, **127 S. Ct. 1169 (2007);** ***United States v. Bruchey*, 810 F.2d 456, 461 (4ᵗʰ Cir. 1987)**.  In each of the Defendant's plea agreements, the United States Attorney made concessions that were of substantial benefit to each.  The Government agreed to dismiss the kidnapping charge and to decline to pursue the death penalty against Roach.  **Roach Plea Agreement, *supra*, at 1, 2.**  Likewise, for Squirrel and Slee, the Government agreed to recommend sentences at the lower end of the Sentencing Guidelines and to file motions pursuant to U.S.S.G. § 5K1.1 if the Defendants rendered substantial assistance.  **Slee Plea Agreement, *supra*, at 2, 6-7; Squirrel Plea Agreement, *supra*, at 2, 6-7.**  "[I]n exchange for the concessions made by the United States in [these] plea agreement[s], [each Defendant] waive[d] all such rights to contest [his] conviction and/or the sentence except for: (1) claims of ineffective assistance of counsel, or (2) prosecutorial misconduct."  **Defendants' Plea Agreements, *supra*.**  Of

particular note in each plea agreement is the provision that each

Defendant agreed to

> pay full restitution, regardless of the resulting loss amount, which restitution will be included in the Court's Order of Judgment.  The defendant agrees that such restitution will *include all victims directly or indirectly harmed by the defendant's "relevant conduct,"* including conduct pertaining to any dismissed counts or uncharged conduct[.]

*Id.* **(emphasis added)**.

Under the law in this Circuit, "[i]t is well-established that the interpretation of plea agreements is rooted in contract law, and that 'each party should receive the benefit of its bargain.'" ***United States v. Peglera*, 33 F.3d 412, 413 (4th Cir. 1994) (quoting *United  States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993))**.  Each Defendant herein was represented by counsel and examined in open court under oath during the Rule 11 plea hearing before the Magistrate Judge.  At that hearing, each Defendant represented to the Court that he understood the terms of the plea agreement; that he and his attorney had reviewed the agreement; that he had discussed with his attorney all matters concerning his case; that he understood that he had agreed to waive certain of his rights including his right to appeal his conviction and/or sentence on any grounds except those of ineffective assistance of counsel or prosecutorial misconduct; and

specifically, he understood that, in the Court's discretion, restitution may be ordered paid to any victim of the offense. **Defendants' Rule 11 Inquiries and Orders of Acceptance of Pleas, *supra.*** After such representations, the Magistrate Judge determined that each Defendant had entered his plea knowingly and voluntarily and understood the charges, potential penalties, and consequences of said plea. *Id*. Accordingly, the Court finds that Roach, Slee and Squirrel are bound by the terms of their respective plea agreements to pay restitution under the MVRA.

## B.   AMOUNT OF RESTITUTION

At the time of her death, Tamara Seay was an enrolled member of the Cherokee Indian Tribe ("the Tribe") and lived on the Cherokee Indian Reservation with her grandmother, Mary Lambert, who has legal custody of Seay's two-year old daughter, Jailyn Ethelyn Bird. **Supplement to PSR, *supra*.** Seay was 18 years old at the time of her death, was unemployed, and had dropped out of high school. *Id*. As an enrolled member of the Tribe, Seay received two *per capita* payments each year, one in June and the other in December, and would have received such payments for the

remainder of her life.  *Id.*  The Defendants are all enrolled members of the Tribe and they, too, receive the same *per capita* checks from the Tribe.

In determining the amount of restitution to be paid to the victim's estate, the Court will consider both the amount of lost future wages and the amount of lost income from semi-annual *per capita* checks she would have received from gaming revenues generated by the Tribe.

1. **Lost income from semi-annual *per capita* checks**

According to the Government, the *per capita* checks totaled $6,729 in 2004, $9,462 in 2005, $8,948 in 2006, and the first check distributed in 2007 totaled $4,291.  **Government's Memorandum, *supra*, at 9 n.1.** Using the Government's figures, the average *per capita* check from 2004 to present equals $4,204.29.

The Government and the Probation Officer estimate that Seay would have lived 56 more years to an age of 74.  *Id.***; Supplement to PSR, *supra*.**  However, the Court determines that a more reliable estimate of Seay's life expectancy is contained in the mortality tables of the North Carolina General Statutes.  **N.C. Gen. Stat. § 8-46 (2006)**.  The mortality table provides that Seay, who completed her seventeenth year, would have

a life expectancy of 59.8 more years. *Id.* Therefore, using the more conservative estimate of 59 years and multiplying that figure by the average yearly amount of the *per capita* checks ($8,408.58) equals $496,106.22, representing the amount of estimated *per capita* income lost. The Court finds the assumptions of life expectancy and average amount of the *per capita* checks are reasonable and the calculated amount of $496,106.22 in lost *per capita* income is supported by the preponderance of the evidence.

### 2. Lost future earnings from employment

The MVRA specifically provides for restitution to "the victim for income lost by such victim as a result of the offense" and shall represent "the full amount" of the victim's loss. **18 U.S.C. §§ 3663A(b)(2)(C), 3664(f)(1)(A)**.

Although the Court has been unable to find a case in which this Circuit has ruled on the issue as to whether or not an award of restitution to the victim's estate for future lost income may be ordered, other circuits have done so, and the Court finds those rulings persuasive. *See United States v. Cienfuegos*, **462 F.3d 1160 (9th Cir. 2006)**; *United States v.*

***Serawop*, 409 F. Supp. 2d 1356 (D. Utah 2006), *aff'd*, 505 F.3d 1112 (10th Cir. 2007); *United States v. Oslund*, 453 F.3d 1048 (8th Cir.), *cert. denied*, 127 S. Ct. 750 (2006).**

In *Cienfuegos*, the Ninth Circuit held "[t]he plain language of the MVRA contemplates an award of restitution to the victim's estate for future lost income and certainly does not expressly exclude such an award."

***Cienfuegos*, at 1164.**

> It would be illogical to assume that the ultimate death of a person who suffered bodily injury eliminates restitution for lost income. To not award restitution for future lost income would lead to a perverse result where murderers would be liable for markedly less in restitution than criminals who merely assault and injure their victims. Thus, it is plain that the statute allows a representative of the victim's estate or another family member to assume the victim's rights to collect restitution for future lost income; however, under section 3663A(a)(1), the restitution is to be paid to the victim's estate.

*Id.*

In *Serawop*, the defendant was convicted of voluntary manslaughter in the death of his three-month old daughter and ordered to pay restitution under the MVRA in the amount of $325,751 to her estate for her lost income. *Serawop,* **409 F. Supp. 2d at 1358.** The defendant appealed; the Tenth Circuit affirmed the district court's restitution award and found that Congress intended, specifically through the 1996 Amendment, to

ensure the victim received "full restitution" as a result of the crime. **Serawop, 505 F.3d at 1112.**

Characterizing the issue of whether the MVRA authorized inclusion of future lost income in a restitution order as an issue of first impression, the Eighth Circuit in *Oslund* concluded that "[b]ecause future income is income that is lost to the victim as a direct result of the crime, the plain language of the statute leads to the conclusion that lost future income can be included in a restitution order." **Oslund, supra, at 1063.** However, such a calculation of lost future income cannot be based on mere speculation. **Cienfuegos, supra, at 1168-69**.

As previously noted, Seay was 18 years old at the time of her death, had dropped out of high school, was unemployed, and lived with her grandmother, Mary Lambert, who has custody of Seay's minor child, Jailyn Bird. **Supplement to PSR, supra.** Although Ms. Lambert has custody of Jailyn, Seay had a legal duty to provide support for her child. Ms. Lambert addressed the Court during November 19 hearing and testified that Seay had planned to return to school and earn her G.E.D. and hoped to work in the field of forensics or as an attorney. **Transcript, supra, at 32-33.** The Government calculated Seay's lost future income to be $963,748, based

on the assumptions that Seay would work 40 hours a week for 50 weeks a year until age 65 at North Carolina's current minimum wage of $6.15 an hour, and that she would receive an annual wage increase of two percent per year beginning during her eighteenth year. **Government's Memorandum, at 9**. These figures yielded an annual income of $12,500 at age 18, and an annual income of $31,197 at age 65. *Id*. **at 9-10.** The Court finds these assumptions to be reasonable and hereby accepts the Government's calculation of Seay's lost future income in the amount of $963,748 to be supported by the preponderance of the evidence.

Therefore, based on the preponderance of the evidence, the Court finds that the Defendants, jointly and severally, shall be ordered to make restitution to the Estate of Tamara Susan Seay in the amount of $1,459,854.22. Further, the Court finds that each Defendant has the ability to pay the restitution amount from the *per capita* checks he receives from the Tribe.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendants Terence Howard Roach, Michael Edward Slee, and Joshua Brent Squirrel are hereby jointly

and severally liable to make restitution to the Estate of Tamara Susan Seay in the amount of **ONE MILLION, FOUR HUNDRED FIFTY-NINE THOUSAND, EIGHT HUNDRED FIFTY-FOUR DOLLARS AND TWENTY-TWO CENTS ($1,459,854.22).**

**IT IS FURTHER ORDERED** that the Clerk prepare an amended Judgment for each of the Defendants herein reflecting the following:

1. Restitution amount on Page 4 of each Judgment should be amended to reflect the total amount of restitution to be $1,465,499.22, and the paragraph beginning, "This restitution does not include," shall be deleted; and

2. The "Estate of Tamara Susan Seay" shall be added to the list of Restitution Payees on Page 5a of each Judgment and the amount of restitution to be made to the Estate is $1,459,854.22. The paragraph beginning, "This restitution does not include," shall be deleted.

The Government may apply for a writ of garnishment pursuant to 28 U.S.C. § 3205 at the appropriate time.

25

Signed: January 16, 2008

Lacy H. Thornburg
United States District Judge